UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS M. DISCON** | **CIVIL ACTION** |
| **VERSUS** | **No. 06-2492** |
| **CORE FUNDING GROUP, L.P.** | **SECTION: I/1** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of plaintiff, Thomas M. Discon ("Discon").[1] Also before the Court is a motion for summary judgment filed on behalf of defendant, Core Funding Group, L.P. ("Core").[2] For the following reasons, plaintiff's motion for summary judgment is **GRANTED IN PART AND DISMISSED AS MOOT IN PART** and defendant's motion for summary judgment is **DENIED**.

### *BACKGROUND*

Discon is an attorney who represented clients in, and was the discovery chairman for, a class action lawsuit in Louisiana ("*Gaylord Container* litigation").[3] Core is allegedly engaged

---

[1] R. Doc. No. 37.

[2] R. Doc. No. 41.

[3] R. Doc. No. 41-8, Core mot., ex. 3, Discon dep. at 14-15.

in the business of purchasing interests in anticipated legal fees at a discounted rate.[4]  In May or early June, 2002, the *Gaylord Container* plaintiffs reached a multimillion dollar settlement with one of the defendants, Vicksburg Chemical Company ("Vicksburg"), and Vicksburg's insurers.[5]  Discon was entitled to receive a portion of attorney's fees from the settlement.[6]

On June 26, 2002, Discon and Core entered into an Offer to Purchase/Purchase Contract ("Purchase Contract"), whereby Discon sold a portion of his right, title, and interest in the attorney's fees to be paid pursuant to the *Gaylord Container* settlement.[7]  On that same date, Discon executed an Assignment of Interest ("Assignment"), wherein Discon, in return for the discounted sum of $200,000, assigned his interest in and to the first $230,114.04 of the settlement.[8]  On June 26, 2002, Core timely paid Discon the $200,000 purchase price.[9]

---

[4] R. Doc. No. 1, compl. ¶ VI.

[5] R. Doc. No. 37-3, Discon statement of material facts ¶ 7 [hereinafter "Discon SOF"]; R. Doc. No. 41-3, Core statement of material facts ¶ 10 [hereinafter "Core SOF"]; Discon dep. at 20-21, 25.

[6] Discon SOF ¶ 8; Core SOF ¶¶ 10-11.

[7] R. Doc. No. 41-6, Core mot., ex. 1, Purchase Contract.  The Purchase Contract provides in pertinent part:
> [Discon] desires to sell to [Core], and [Core] desires to purchase from [Discon], a portion of his right, title and interest in and to the attorney fees to be paid under the Settlement and Claim awarded against Gaylord Container Corporation. [Core] understands that [Discon] wish[es] to sell the first $230,144.04 due and payable on or before April 15, 2003 . . . , which are due to [Discon] in the case of Gaylord Container Litigation . . . from Gaylord Container Corporation . . . who is legally obligated to pay the Settlement.  We understand that you are willing to accept the sum of $230,144.04 (the "Purchase Price") for a portion of your attorney fees described as, the first $230,144.04 due and payable to you, less any per diem discount.

[8] R. Doc. No. 41-7, Core mot., ex. 2, Assignment ¶ C.  The Assignment provides in pertinent part:
> [Discon] is willing to sell to [Core] its interests in and to the first $230,114.04 of the Settlement at a discount for the aggregate amount of $200,000 ("Purchase Price").
>     . . . .
>     [Discon] does hereby self, assign, transfer and convey to [Core] all its right, title and interest in and to a portion of the Gaylord Settlement, and any collateral rights under the applicable Settlement, if any, and [Core] has become the absolute owner thereof, including all proceeds and all rights to payments from the

The Assignment provided that if Core was paid prior to April 15, 2003, Discon would be entitled to receive a discount of $44.92 per day.[10] The Assignment was furnished to the Special Master of the *Gaylord Container* litigation and it instructed the Special Master to pay Core any attorney fees due pursuant to the Assignment.[11] After Discon and Core entered into the Purchase Contract and Assignment, Vicksburg filed for bankruptcy which delayed the settlement payment.[12]

On August 17, 2005, Core sent a letter to Discon regarding the Vicksburg settlement, informing Discon that, as of August 19, 2005, the balance of attorney's fees that he owed was $349,864.05.[13] When the settlement funds became available, Discon instructed the Special Master to pay Core the amount it claimed it was owed in attorney's fees.[14] Therefore, on September 20, 2005, Core was paid $355,806.68 from the Bogalusa Chemical Release Louisiana Class Action Settlement Account for the account of Discon.[15] The amount Core was paid represents the attorney's fees sold, $230,144.04, plus 18% interest for the time period between

---

Gaylord Container Litigation or any other appropriate source and all interest thereon limited to $230,144.04, less any applicable discount for early payment.
*Id.* ¶¶ C, 1.

[9] Discon SOF ¶ 16; Core SOF ¶ 12; Discon dep. at 107.

[10] Assignment ¶ D. The Purchase Contract and the Assignment do not contain any provision relating to payment *after* April 15, 2003.

[11] Discon SOF ¶ 4; Core SOF ¶n 3; R. Doc. No. 41-9, Core mot., ex. 4, letter acknowledging notice of assignment; Discon dep. at 47-48.

[12] Discon SOF ¶ 17; Core SOF ¶¶ 13, 18.

[13] Discon SOF ¶ 3; Core SOF ¶ 6; Discon dep. at 31-33; R. Doc. No. 41-12, Core mot., ex. 7, letter from Core to Discon regarding attorney's fees owed.

[14] Discon SOF ¶ 19; Core SOF ¶ 22; Discon dep. at 39.

[15] Discon SOF ¶ 13; Core SOF ¶ 22; R. Doc. No. 41-10, Core mot., ex. 5, check to Core.

April 15, 2003, and the payment date.[16]

On May 12, 2006, Discon filed a class action complaint against Core alleging that Core was liable for breach of contract and conversion; Discon also sought injunctive relief.[17] On February 2, 2007, Discon moved and was granted permission to withdraw the class allegations.[18]

On December 4, 2007, Discon filed a motion for summary judgment, arguing that he is entitled to the difference between the purchase price, $230,144.04, and the amount paid, $355,806.68, pursuant to his breach of contract and conversion claims.[19] Discon argues that he did not breach the contract as the contract unambiguously provides for an interest charge if the delay in payment is due to Discon's acts or omissions.[20] Furthermore, Discon argues that the Assignment unambiguously exempts his responsibility for Vicksburg's bankruptcy and that he did not breach any of his duties under the Purchase Contract or Assignment.[21]

Core argues that Discon is obligated to pay 18% interest on the attorney's fees for the period between April 15, 2003, and September 20, 2005, because the parties treated the transaction as a loan, despite the fact that they signed a Purchase Contract and Assignment.[22] Core also argues Discon breached his contractual duties by failing to cooperate with Core to

---

[16] Letter from Core to Discon regarding attorney's fees owed.

[17] Compl.

[18] R. Doc. Nos. 23, 24.  Discon also sought injunctive relief on behalf of the class members; when the class allegations were withdrawn, this cause of action became moot.

[19] R. Doc. No. 37-2, Discon mem. supp.

[20] *Id.* at 11-14.

[21] *Id.* at 7-8.

[22] R. Doc. No. 41-2, Core mem. supp. at 2.

ensure that Core received the purchased fees, thereby triggering the 18% interest provision.[23] Core argues that the insolvency provision only precludes Discon's liability if Vicksburg failed to pay the attorney's fees in their entirety, not if Vicksburg's payment was delayed.[24]

*LAW AND ANALYSIS*

**I.     Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).[25] The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of

---

[23] *Id.* at 3, 22.

[24] *Id.* at 11.

[25] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout." Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment). The changes "are intended to be stylistic only," rather than substantive. *Id.*

material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.    Discussion

Under Texas law,[26] "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (*quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)).

The United States Court of Appeals for the Fifth Circuit outlined contractual

---

[26] The contracts in question, *i.e.*, the Purchase Contract and the Assignment, are governed by Texas law. Purchase Contract ¶ 4; Assignment ¶ 9. Under Texas law, a written assignment is to be construed in accordance with "the rules of interpretation and construction applicable to contracts." *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 832 (Tex. App. 2006).

interpretation pursuant to Texas law:

> Texas contract interpretation law indicates that "[i]f policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." "Whether a contract is ambiguous is itself a question of law." The fact that the parties offer different contract interpretations does not create an ambiguity. "An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations."

*Tex. Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007) (*quoting Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)) (citations omitted).

Terms should be given "'their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense.'" *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 490 (5th Cir. 2007) (*quoting Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "When two or more instruments executed contemporaneously or at different times, pertain to the same transaction, the instruments . . . will be read together . . . ." *McGoodwin v. McGoodwin*, 181 S.W.3d 870, 874 (Tex. App. 2006).

"'It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing.'" *City of Alton v. City of Mission*, 164 S.W.3d 861, 869 (Tex. App. 2005) (*quoting City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Concerning the first element outlined in *Smith Int'l, Inc.*, there is no dispute that the

Purchase Contract and Assignment are valid contracts.[27] Concerning the second element of Discon's breach of contract claim, Core argues that Discon did not perform under the contract because Discon did not fulfill his duty to ensure that Core received the settlement funds.[28] The Purchase Contract provides that:

> [Discon] understands and agrees that [Discon] has a continuing and irrevocable duty to cooperate with [Core] (especially post-closing hereon) to ensure that [Core] receives all of the Subject purchased fees amount and otherwise obtain the benefit of its bargain hereunder . . . .[29]

Core has not provided any summary judgment-type evidence that Discon failed to cooperate with Core. The only evidence provided shows that Discon did not engage in negotiations with Vicksburg.[30] There is no evidence to suggest that Core asked Discon to engage in negotiations with Vicksburg.

Core also argues that Discon triggered the interest provision of the Purchase Contract by breaching his duty to cooperate with Core, thereby ensuring that Core received the amount owed. Core argues that it is, therefore, entitled to 18% interest on the purchase price from April 15, 2003, through the date the funds were received, *i.e.*, September 20, 2005. The interest provision of the Purchase Contract provides:

> [Discon] understands and agrees that in the event the Subject Settlement amount (any part thereof, or other benefit) is ever denied, diverted, set off, delayed, or withheld from [Core] by virtue of any claim, demand, attachment, or other act or omission by [Discon] (or any person acting or claiming by, through, or under [Discon's] rights), [Discon] shall be required to pay [Core] the entire amount of any

---

[27] Discon SOF ¶¶ 1, 2; Core SOF ¶¶ 1, 2.

[28] Core mem. supp. at 3-4.

[29] Purchase Contract ¶ 7.

[30] Discon SOF ¶ 18; Core SOF ¶¶ 18, 29; Discon dep. at 30, 70-72.

such Subject Payment, together with interest thereon at the rate of the greater of eighteen percent (18%) per annum or the highest rate allowed by law, from the date when such Subject Payment should have been received by [Core], up through the date of actual [Core's] actual receipt of payment.[31]

As mentioned, Core has not provided any admissible summary judgment evidence that Discon triggered the interest provision by failing to cooperate with Core. The interest provision is only implicated if an act or omission by Discon, or any person acting or claiming by, through, or under Discon, delays the receipt of the funds to Core. In this case, it was Vicksburg's bankruptcy, not an act or omission of Discon, that delayed the payment to Core. Discon has not breached the contract and he has performed his duties pursuant to the contract.

Concerning the third and fourth elements outlined in *Smith Int'l, Inc.*, because Core was not entitled to the 18% interest on the purchase price of $230,144.04, Core breached the contract by overcharging Discon the amount due. Discon's damages are the amount of the overcharge.[32] Discon has provided evidence with respect to all elements of his breach of contract claim and Discon is entitled to summary judgment.[33]

Accordingly,

**IT IS ORDERED** that plaintiff's motion for summary judgment[34] is **GRANTED IN**

---

[31] Purchase Contract ¶ 8.

[32] Discon does not allege or provide evidence of any other damages that may have arisen due to the breach.

[33] In view of the Court's finding that Discon is entitled to recover for his breach of contract claim based upon the unambiguous provisions of the contract, the Court need not address whether the provision in the Assignment relieving Discon of his liability in the event of the obligor's failure to pay also applies to situations where the obligor's payment is delayed.
   The Court also does not engage in an analysis concerning Discon's conversion cause of action because Discon only seeks return of the interest as damages. Because interest was awarded pursuant to Discon's breach of contract claim, the Court need not determine whether Discon would also be entitled to recover interest pursuant to his conversion claim.

[34] R. Doc. No. 37.

**PART AND DISMISSED AS MOOT IN PART**.  It is granted as to plaintiff's breach of contract claim and dismissed as moot as to plaintiff's conversion claim.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment[35] is **DENIED**.

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of the plaintiff, Thomas M. Discon, and against the defendant, Core Funding Group, L.P., in the amount of $125,662.64.

New Orleans, Louisiana, May 9, 2008.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[35] R. Doc. No. 41.